UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                                   2:06-cr-74-FtM-29DNF

JOSE ANTONIO JIMENEZ
PEDRO ENRIQUE JIMENEZ
_____

**OPINION AND ORDER**

     This matter comes before the Court on United States Magistrate Douglas N. Frazier's Report and Recommendation (Doc. #47), filed on September 12, 2006, recommending that defendants' Motion to Suppress (Doc. #30) be denied.  Defendants filed Objections (Doc. #48) on September 21, 2006.  Defendants have accurately stated the Court's standard of review.  (Doc. #48, p. 2.)

    The basic facts of this case are accurately set forth in the Report and Recommendation, pages 2-6, and will be adopted but not repeated here.  The Report and Recommendation first finds the stop of the vehicle to have been lawful, either on the basis of a lawful traffic stop or upon reasonable suspicion (Doc. #47, pp.7-9), and the Court agrees.  Defendants do not challenge the lawfulness of the stop, and indeed have conceded that the traffic stop was lawful.  (Doc. #48, p. 5 n.1.)

The Report and Recommendation finds that defendants were seized within the meaning of the Fourth Amendment, i.e., were arrested, at the time they were told to return to the Residence and the officer retained the driver's license and registration and the identification documents and cell phones of the defendants. (Doc. #47, pp. 9-10.) Defendants agree that this was the point of arrest (Doc. #48, p. 5), and so does the Court. It is undisputed that this arrest was without a warrant as to either defendant.

It is beyond dispute that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). The dispositive issue in this case is whether probable cause existed as to either defendant at the time of their arrest.

In arriving at its probable cause determination, the Report and Recommendation relied upon the collective knowledge of the officers. (Doc. #47, pp. 11-12.) While defendants are lukewarm in their embrace of the collective knowledge principle (Doc. #48, p. 5), the Court agrees that consideration of the officers' collective knowledge is appropriate in this case. "[W]hen a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause." United States v. Wilson, 894 F.2d 1245, 1254 (11th Cir. 1990). There was sufficient

communication between the officers in this case to justify consideration of their collective knowledge.

Defendants criticize the Report and Recommendation for not setting forth a number of facts that the officers did not know at the time of arrest. (Doc. #48, pp. 4-5.) While the Report and Recommendation did not summarize every fact elicited at the evidentiary hearing, the Court finds this objection to be without merit. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." Devenpeck, 543 U.S. at 152 (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Pringle, 540 U.S. at 371 (citation and internal quotations omitted). Thus, it is not what the officers did not know that is analyzed, but rather what they did know.

Defendants also argue that the Report and Recommendation should have included a discussion of the difference between probable cause to arrest and articulable suspicion to detain for purpose of investigation. (Doc. #48, pp. 5-6.) The Court disagrees. Having correctly determined that both defendants were arrested, no discussion of articulable suspicion to detain was required. Either the officers had probable cause, or the arrest

was unlawful.  Similarly, United States v. Nunez, 455 F.3d 1223 (11th Cir. 2006) is not relevant since it dealt with the issue of the existence of reasonable suspicion, not probable cause.  The Court overrules these objections.

Defendants point to the officers' subjective belief that they did not have probable cause as being "telling," even though not "legally decisive."  (Doc. #48, p. 5.)  The Supreme Court has consistently held to the contrary.  "Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck, 543 U.S. at 153 (citations omitted).  Thus, an officer's belief that he has probable cause or does not have probable cause is simply not a pertinent factor.

The definition of probable cause is well settled, if not always easy to apply to a given set of facts.  "Probable cause exists when the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006).  See also United States v. Lyons, 403 F.3d 1248, 1253 (11th Cir.), cert. denied, 126 S. Ct. 732 (2005). Probable cause is a practical, nontechnical concept that deals with the factual and practical considerations of everyday life upon which reasonable and prudent persons, not legal technicians, act.

Pringle, 540 U.S. at 370 (citations omitted).  The Supreme Court has further described probable cause as a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily or even usefully, reduced to a neat set of legal rules."  Pringle, 540 U.S. at 370-71 (citations omitted).  However, "the substance of all definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized."  Pringle, 540 U.S. at 371 (citations and internal quotations omitted).  Paraphrasing Lyons, 403 F.3d at 1254, the dispositive question is whether, at the time the defendants were arrested, based on the totality of the facts and circumstances within the officers' collective knowledge, there was probable cause that each defendant was involved in a marijuana offense.

Defendants complain that the Report and Recommendation simply "lumps" both defendants together in its probable cause determination, without making the required particularization.  (Doc. #48, pp. 6-7.)  The Court's review of the Report and Recommendation leads it to conclude that there was no such failure to particularize, but rather a finding of probable cause as to each defendant.

The following was known by law enforcement officers at the time defendants were arrested: (1) The Glades County Sheriff had received information from a concerned citizen that there were unusual living activities occurring at the Residence at 3960 Indian

-5-

Hills Drive (the Residence); (2) The area around the residence was semi-rural, with sporadic houses on a few lots and no houses on the lots adjoining the Residence, which was a 2,000 square foot single-family house on a corner lot; (3) Four officers, including an officer (Detective Harris) with training and experience involving marijuana grow operations who was assigned to the Drug Enforcement Administration (DEA) task force, began surveillance of the Residence; (4) Using binoculars, Detective Harris saw three air conditioner units outside the Residence and observed that all the windows were covered with vertical blinds with paneling covering broken veins; (5) Detective Harris found the air conditioning units to be excessive for the house and the window coverings odd; (6) a five foot chainlink fence surrounded the Residence's lot, and it was chained and double padlocked; (7) PVC piping was laying in the yard, and a hose went from a well towards the house; (8) during the surveillance a Jeep backed into the Residence's driveway, but did not enter the fenced-in area; (9) the Jeep doors were opened, but no one got out; Detective Harris saw several people on cell phones inside the vehicle; both defendants were passengers, and Detective Harris soon saw Jose Jiminez exit the Jeep while using a cell phone; (10) Believing his surveillance was compromised, Detective Harris was driven by Detective Pepitone to make contact with Jose Jiminez; (11) Detective Harris, under the ruse of being interested in buying property next door, asked Jose Jiminez if he knew the owner of the adjoining property; Jose Jimenez responded that he did

not; (12) At this time Detective Harris smelled a strong odor of raw marijuana coming from Jose Jiminez; (13) After the officers left, Detective Harris told the other officers what he had smelled, and saw the Jeep leave the Residence; (14) The Sheriff and Detective Harris resumed surveillance of the Residence from a new location in the woods, and saw the Jeep return to the driveway; (15) Defendants Jose Jiminez and Pedro Jiminez exited the Jeep, while one person remained inside; (16) Defendants unlocked the double padlock, and both entered the Residence, where they remained out of sight of the officers for three to five minutes; (17) Both defendants returned to the Jeep, and the Jeep left the Residence rapidly; (18) After notifying the other officers, Detective Harris walked to one side of the Residence and smelled the very strong odor of raw marijuana coming from the Residence from a distance of 50-60 feet; and (19) Based upon his experience and training, Detective Harris believed the Residence contained a marijuana grow operation.

The Court concludes that under the standard summarized above, the officers had probable cause to arrest each of the two defendants. Under all the circumstances, it was reasonable to infer a common enterprise at least between the two men who entered the Residence.

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation (Doc. #47) is **accepted and adopted**, as supplemented by this Opinion and Order.

    2.    Defendants' Motion to Suppress (Doc. #30) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of October, 2006.

_____
JOHN E. STEELE
United States District Judge

Copies:
Hon. Douglas N. Frazier
AUSA
Counsel of Record